UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES B. BRYANT<br>1121 Savoy Street<br>San Diego, CA 92017<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF THE NAVY<br>1000 Navy Pentagon<br>Washington, D.C. 20350-1000<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*  Civil Action No. 1:19-cv- 02004<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, seeking the production of agency records requested by the plaintiff James B. Bryant from the defendant Department of the Navy.

## JURISDICTION

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff James B. Bryant (hereinafter "Plaintiff") is a retired, submarine-qualified, Navy captain who served 23 years on active duty after graduating from the United States Naval Academy in 1971 and currently investigates, lectures, and writes

about the 1963 loss at sea of the nuclear-powered fast attack submarine USS THRESHER (SSN 563) (hereinafter "THRESHER") and the accuracy of the Navy Court of Inquiry's (NCOI) report into the cause of that loss.  Plaintiff's Naval service included three tours onboard THRESHER-class nuclear-powered fast attack submarines, including one tour as the executive officer and one tour as the commanding officer.  For the past two years, Plaintiff has spent most of his time researching and writing on the THRESHER's sinking and the accuracy of the NCOI's conclusions and opinions regarding the cause of that loss with the intent to inform the public that the loss of THRESHER may have resulted from the United States Government's intentional or unintentional failure to use appropriate precautions due to the tremendous pressure it was under to advance United States technology during an intense period of military-geopolitical competition with the Soviet Union.

4.  Defendant Department of the Navy (hereinafter "Navy") is an agency within the meaning of 5 U.S.C. § 552(f) and is in possession and/or control of the records requested by the plaintiff that are the subject of this action.

**FACTUAL BACKGROUND**

5.  This FOIA lawsuit is brought under the Freedom of Information Act ("FOIA").  It seeks production of the non-exempt portions of certain U.S. Government records relating to the loss at sea of the THRESHER and the NCOI into that loss, as well as records relevant to whether any information in the aforesaid records, all of which is more than 56 years old, is specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and

are in fact properly classified pursuant to such Executive order.

6. On information and believe, in the late 1950s and early 1960s, the United States was in a great power competition with the Soviet Union. There were concerns within the United States that we were losing this competition. In September 1961, Soviet leader Nikita Khrushchev was pictured on the cover of <u>Time</u> magazine saying, "We will bury you!" while the U.S. press and intelligence community were speculating that Soviet intercontinental ballistic missiles were better than their U.S. equivalents.

7. On April 10, 1963, the THRESHER was lost at sea while performing a deep dive test during sea trials, killing all 129 officers, sailors, and civilians onboard. The same day, the Commander in Chief, United States Atlantic Fleet, ordered a NCOI to investigate that loss at sea.

8. On or after June 5, 1963, the NCOI issued the report of its investigation and opined that a flooding casualty in the engine room of the U.S.S. THRESHER was the most probable cause of the submarine's sinking. The NCOI also made a number of recommendations, the bulk of which stated the need for the careful review of design, construction, and inspection of vital submarine systems and operating procedures. The NCOI also warned "[t]hat there is a danger that, in melding together fact and conjecture, conjecture may be stretched too far and become accepted as fact, thus narrowing the field of search for possible causes of the casualty" and "[t]hat the fact that the court has singled out certain cases for study should not deter others, particularly members of the crews of similar ships, from continuing to study the many questions raised by the

THRESHER's loss."  These statements indicate the NCOI itself was not certain of the cause of the THRESHER's loss.

9. The NCOI report's opinion that the most likely cause of the loss of THRESHER was major, continuous flooding from a seawater pipe in the engine room has been publicly questioned over the years.

a. A failure in the submarine's control surfaces as a major factor and the possibility that it was not major flooding is discussed in *Death of the USS Thresher, The Story Behind History's Deadliest Submarine Accident*, by Norman Polar and first published in 1964 and revised in 2001.

b. Strong evidence that major flooding *did not* occur and that there was an electrical problem is documented in *Why the USS Thresher (SSN 593) Was Lost*, by Bruce Rule and published in 2017.

c. *The Wretched Fate of THE USS Thresher*, by Joseph Williams and published online in 2019 (https://www.warhistoryonline.com/instant-articles/the-tragedy-of-uss-thresher.html) echoes Rule's book that electric plant issues were a major cause.

d. The source of the flooding from a failed silver brazed joint was downplayed in a 1987 master of arts thesis*, Effects of the USS THRESHER Disaster upon Submarine Safety and Deep-Submergence Capabilities in the United States Navy* by Philip Martin Callaghan.

e. The NCOI directed a main ballast tank blow test on THRESHER's sister submarine, USS TINOSA (SSN 606), to determine why THRESHER's main ballast tank blow system failed.  The description of this test in the NCOI report has three significant

4

differences from an eye witness report published by the Naval Submarine League in June 2018 in their official publication, The Submarine Review titled, "The Tragic Loss of the Nuclear Submarine THRESHER; 10 April 1963"; by Captain Zack Pate, Rear Admiral David Gobel and Vice Admiral George Emery.

    f.  In 1976 John Bentley 1976 book, *The THRESHER DISASTER, The Most Tragic Dive in Submarine History* notes that the Navy did not explain why there was a submarine crew rescue capability of only 850 feet when THRESHER was capable of being trapped on the ocean bottom at much deep depths.

    10.  The Navy has previously declassified portions of the NCOI's report and redacted copies of those portions are publicly available of the website of the Navy Judge Advocate General.  See

http://www.jag.navy.mil/library/investigations/USS%20THRESHER%20PT%201.pdf,

http://www.jag.navy.mil/library/investigations/USS%20THRESHER%20PT%202.pdf,

http://www.jag.navy.mil/library/investigations/USS%20THRESHER%20PT%203.pdf, and

http://www.jag.navy.mil/library/investigations/USS%20THRESHER%20PT%204.pdf.  The Navy included only 19 of approximately 1,700 pages of testimony in that release even though more testimony had been given publicly and reported in the press.

    11. On information and belief, Arlington National Cemetery plans to hold a ceremony in late September 2019 to dedicate a memorial to 129 crewmembers and civilians who were killed when the USS THRESHER was lost at sea.  the submarine's crew will be dedicated at Arlington National Cemetery in Virginia, making this a fitting time to

reexamine the causes of the loss—if only the data on which the NCOI relied could be made available before that ceremony.

12. This FOIA lawsuit seeks disclosure of the requested records in order to better inform the public about the activities of the Navy/U.S. Government with respect to the loss of the THRESHER and the officers, sailors, and civilians onboard; the adequacy of the investigation thereinto; and the accuracy of the NCOI's opinions as to the probable cause of the THRESHER's sinking. This lawsuit seeks expedited processing to ensure disclosure before Arlington National Cemetery's late September 2019 memorial dedication.

13. The public interest in the requested records is further indicated by the fact James D. Hornfischer, author of "The Last Stand of the Tin Can Sailors: The Extraordinary World War II Story of the U.S. Navy's Finest Hour" (Random House Publishing Group 2005), "Ship of Ghosts: The Story of the USS Houston, FDR's Legendary Lost Cruiser, and the Epic Saga of Her Survivors" (Random House Publishing Group 2007), "Neptune's Inferno: The U.S. Navy at Guadalcanal" (Random House Publishing Group 2012), and "The Fleet at Flood Tide: America at Total War in the Pacific, 1944-1945" (Random House Publishing Group 2016), has also submitted a FOIA request for THRESHER records and Navy has added his request to Plaintiff's FOIA Request for THRESHER records.

## **COUNT ONE**

14. Plaintiff repeats and reallege paragraphs 5 through 13 above, inclusive.

15. By letter dated April 8, 2019, Plaintiff, through counsel, submitted to Defendant Navy by online means and regular U.S. mail, a FOIA request (hereinafter "the

FOIA Request").

16. The FOIA Request specifically sought copies of the below-identified records, as defined for purposes of the FOIA in 5 U.S.C. § 552(f)(2) and interpreting case law, created, received and/or maintained by any element of the Department of the Navy, as defined in 10 U.S.C. §§ 8001(a) and 8061 (the "Navy"):

a. The Record of Proceedings of the NCOI on the loss of the USS THRESHER (SSN 593) including its transcript, exhibits, photographs, charts, graphs, memoranda, and technical reports.

b. All records not duplicative of those responsive to the immediately preceding request above that are the subject of the Request for Records Disposition Authority (SF 115) from the Department of the Navy, signed by the head, Records Management Branch, dated 10/26/92 and given Job Number N1-181-92-2 by the National Archives and Records Administration. The subject records are identified in block 8 of the referenced form as:

> Court of Inquiry on USS THRESHER (SSN 593), 2 cu.ft., 1963.
>
> Record of Proceedings of the Court of Inquiry on the loss of the USS THRESHER (SSN 593), convened at the U.S. Naval Base, Groton, CT, and the Portsmouth Naval Shipyard, Portsmouth, NH, in April-May 1963. Records consists of a 12-volume transcript of proceedings with exhibits, including photographs, charts, graphs, memoranda, and technical reports. Records are located at the Boston Federal Records Center in accession number 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.

c. All records not duplicative of those responsive to the immediately preceding requests above that were reviewed for declassification in response to OPNAV memo 5510 Ser N87/8U656047 of 30 Apr 98 that pertain to the loss of the USS THRESHER. A copy of that memorandum is enclosure (2) for your convenience.

d. Copies of any written or electronic correspondence, or notes or memoranda of oral communication, to or from the Secretary of the Navy and the President of the United States, the National Security Advisor, the Secretary of Defense, the Archivist of the United States, the Director of the Information Security Oversight Office, and/or the Interagency Security Classification Panel or any official thereof, that mentions, discusses, requests, or grants the exemption for any information currently classified in the above-requested documents from the 25-year or 50-year automatic declassification requirements in Section 3.3 of Executive Order 13526, entitled "Classified National Security Information," and dated December 29, 2009, or in a predecessor executive order then in effect.

e. Copies of the first edition and second edition of the three-volume R. F. Cross Associates, "Sea- Based Airborne Antisubmarine Warfare", 1940–1977. This document is reported to have been prepared for OP-95 and declassified on December 31, 1990.

f. If not included in the records responsive to requests above:

(1) All records--including LOFARGRAMs--of, mentioning, or discussing THRESHER-related acoustic data recorded during the morning of April 10, 1963 when THRESHER was lost, or that were reviewed an analyzed as part of the NCOI's

investigation, and all records containing analysis or interpretation of this data. At one time copies of these LOFARGRAMs were located at the Office of Naval Intelligence.

(2) All records mentioning the USS THRESHER's Post Shakedown Availability Weight Control weight and displacement change calculations and all records providing ballasting or reballasting instructions to the persons, personnel, offices, divisions, shops, or any organizational component of the Portsmouth Naval Shipyard responsible for installing on and removing lead ballast from the USS THRESHER.

(3) The USS THRESHER was lost during a deep dive on the morning of April 10, 1963. All records discussing whether, or not and/or why or why not, the Main Coolant Pumps on the USS THRESHER were or were not shifted to slow speed before the reactor scrammed at about 0911 local time April 10, 1963; all records mentioning and/or discussing why there was a variation in USS THRESHER's Main Coolant Pump speed from about 0909 to 0911 local time April 10, 1963; and all records mentioning or discussing how all of the USS THRESHER's Main Coolant Pumps stopped, slowed or could have stopped or slowed on or about 0911 local time April 10, 1963.

(4) Any records created by, addressed or sent to, or mentioning strainers, orifice plates or reducing valves manufactured by Marotta Control, Inc. or the Marotta Engineering Company (hereinafter collectively as 'Marotta') and either mentioning the USS THRESHER or dated between 1961 and the present; and any records of Navy and/or THRESHER NCOI communications with, by, or mentioning Marotta and the installation, removal, or nonremoval of equipment from the USS THRESHER prior to the USS THRESHER's systems becoming operational between 1961 and the present.

(5) All reports of or records mentioning or resulting from any pier side test of USS TINOSA's main ballast tank blow system conducted between 1961 and 1964.

(6) Any records of USS THRESHER sea-trial agenda and revised sea-trial agenda provided to or created by the USS THRESHER commanding officer.

(7) All records created, sent, received, or maintained by Admiral Hyman G. Rickover, U.S. Navy, when he was Director of Naval Reactors and that mention or concern LOFARGRAMS of April 10, 1963, or that mention or concern the USS THRESHER.

(8) All records created, sent, received, or maintained by Francis Duncan or any other Atomic Energy Commission or Department of Energy historian provided an office at Naval Reactors Branch of the Bureau of Ships, that mention or concern LOFARGRAMS of April 10, 1963, or that mention or concern the USS THRESHER.

17. The FOIA Request further requested a waiver of or, at a minimum, a reduction in fees. The FOIA Request advised the Defendant that Plaintiff is working with a team of researchers to reveal potential deficiencies or errors with the Navy's investigation into the loss of the THRESHER that could cast doubt on the reliability of the NCOI's conclusions and that Plaintiff intends to publish the results of his research and analysis to the public on a wide scale. The FOIA Request further advised that in the event that fees are ultimately assessed, Plaintiff is prepared to pay fees up to $500 and that Defendant s contact counsel if fees were expected to exceed that amount.

18. The FOIA Request also requested expedited processing, noting FOIA permits expedited processing when a "compelling need" exists. 5 U.S.C. § 552(a)(6)(E)(v). Specifically, "compelling need" means "with respect to a request made by a person

primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." Id. at § 552(a)(6)(E)(v)(II).  The production of a fuller and more complete history of the THRESHER's loss at sea and information revealing the thoroughness, correctness, and sufficiency of the Navy's investigation into that loss remain of public interest.

19.  Plaintiff intends to use information obtained through this FOIA request in this effort and in other original works and has a demonstrated ability to publish the requested information to the public at large or an interested segment thereof in writing, by oral presentation, and by video presentation.  He has the following publications and presentations:

a.  Captain Jim Bryant, "USS Thresher Disaster Still Matters," Article in the Portsmouth Herald, Portsmouth, NH April 1, 2018.  (This article was included a few days later in an official publication of the U.S. Submarine Force entitled Undersea Warfare News; a copy is enclosure (3) for your convenience);

b.  Bryant, James B, "Declassify the THRESHER Data," Proceedings, July 2018, U.S. Naval Institute) See,

https://www.usni.org/magazines/proceedings/2018/july/declassify-THRESHER-data;

c.  Research Paper, "THRESHER Disaster: Technical Reanalysis by a Cold War Submariner," by Captain Jim Bryant, USN (Retired), submitted March 2018 to the American Society of Naval Engineers for publication in their Naval Engineers Journal;

d.  Presentation by Captain James B. Bryant, USN (Ret.) on the USS THRESHER given at the San Diego Archeological Center on the THRESHER in September 2018.  See,

https://www.kpbs.org/events/2018/sep/08/2nd-saturday-uss-THRESHER-disaster/?et=96338 and https://www.youtube.com/watch?v=CJTqyzVO7H4;

    e. Bryant, James B., "Thresher Freedom of Information Act Request Yielding Results," Proceedings, May 2019 (U.S. Naval Institute) See, https://www.usni.org/magazines/proceedings/2019/may/thresher-freedom-information-act-request-yielding-results; and

    f. Plaintiff sought to publish an article entitled, "Quest for Depth," in The Submarine Review, which is published by the Naval Submarine League. This article describes the development of the deep diving submarine that began in World War II and resulted in the THRESHER class submarine. The intended publisher forwarded the proposed article to the Navy. An officer assigned to the Undersea Warfare Division of the Office of the Chief of Naval Operations (N97) in the Pentagon subsequently asserted to Plaintiff that the article contains classified information and Naval Nuclear Propulsion Information but has declined to identify that information to Plaintiff or to provide Plaintiff with a redacted copy, thereby precluding Plaintiff from publishing the information of no concern to the Navy. Plaintiff subsequently made his best guess to identify and remove from the proposed article the information that might have been of concern to the Navy. On June 26, 2018, Plaintiff submitted the revised article to the Department of Defense, Defense Office of Prepublication and Security Review for security review and approval for publication.

    20. By email dated April 4, 2019 from admin@foiaonline.gov, the Navy acknowledged receipt of the online submission and assigned the FOIA Request the Navy

Tracking Number DON-NAVY-2019-005669.

21. By email dated April 18, 2019, the Senior Freedom of Information Act Coordinator for the Naval History and Heritage Command (NHHC) informed Plaintiff that the NHHC had received Plaintiff's FOIA Request and that she would be the primary point of contact for the request.

22. By email dated April 18, 2019 from admin@foiaonline.gov, the Navy stated, "Your request for Expedited Processing for the FOIA request DON-NAVY-2019-005669 has been denied." The email further advised that "this is NOT a denial of your FOIA Request, only a denial of your request for expedited processing" and that the "Naval History and Heritage Command's Freedom of Information Act Office will continue to process your FOIA Request." The email did not inform Plaintiff whether or not he could appeal the denial of his request for expedited processing.

23. On May 3, 2019, Plaintiff's counsel participated in a telephone call with NHHC officials, including the Senior FOIA Coordinator, to discuss the referenced FOIA request. During this call, Plaintiff's counsel was advised that records pertaining to the USS THRESHER's loss at sea were not then in the custody of the NHHC because those records were undergoing a declassification review by another element of the Navy and that was expected to be completed by May 31, 2019. The NHHC officials also asked that Plaintiff prioritize the order in which the various portions of his FOIA request should be completed. Plaintiff, through counsel, supplied the requested prioritization by email dated May 12, 2019.

24. By email dated May 3, 2019, the NHHC Senior FOIA Coordinator summarized

her recollection of the telephone conversation that occurred earlier that day and advised that "this request has been placed in our complex queue due to 'unusual circumstances' as we must examine voluminous records, and must coordinate the review and release of these records with multiple Department of the Navy offices and with other federal agencies. Once the review and coordination is complete, we will determine if any information will be withheld under any other exemptions of the FOIA. Because the date of completion will be beyond the 20 working day time limit of the FOIA, I must inform you of your right to appeal due to the delay your request will encounter. If you consider my response to be a denial of your request, you are entitled to an administrative appeal in writing."

25. By letter dated June 5, 2019, after learning the Navy declassification review had not been completed, Plaintiff through counsel submitted an administrative appeal of the Navy's "denial of the referenced request by not releasing the requested records or asserting justifications for withholdings within 30 days of receiving the referenced request." According to Secretary of the Navy Instruction 5720.42G, "Department of the Navy Freedom of Information Act Program," dated January 15, 2019, administrative appeals of FOIA decisions must be made within 90 calendar days of the initial denial authority's final notice. The administrative appeal was timely submitted and Plaintiff has exhausted his administrative remedies.

26. By email dated June 11, 2019, Navy acknowledged it received the FOIA administrative appeal on June 5, 2019. Separately, Navy informed Plaintiff that his appeal was assigned Appeal Tracking Number DON-NAVY-2019-007895. The statutory

deadline to respond to the administrative appeal expired on July 3, 2019.

27. As of the filing of this Complaint, Navy has improperly withheld agency records from Plaintiff. Navy not released any of the requested records to Plaintiff. Instead, all Plaintiff has received in response to the FOIA Request are digitalized copies of 41 images that the National Archives and Records Administration (NARA) released to Plaintiff, informing Plaintiff's counsel that Defendant had referred parts of the request to NARA, assigned the referral NARA FOIA Case Number RD 61141. NARA advised that it had completed only the search of its image records. It has not completed or released any documentary records. Defendant has not advised Plaintiff of any referrals Defendant has made to other agencies.

28. As of the filing of this Complaint, Navy has neither provided Plaintiff with estimated fees, granted Plaintiff's request for a fee waiver or a reduction in fees, expressly denied Plaintiff's request for a fee waiver or a reduction in fees, nor advised Plaintiff whether he has any rights to appeal the Navy's lack of decision on his fee waiver request. In these circumstances, Plaintiff is not required to submit an administrative appeal of Navy's failure to grant his request for a waiver or a reduction in fees. To the extent Plaintiff is required to submit an administratively appeal Navy's failure to grant his request for a waiver or a reduction in fees, Plaintiff's administrative appeal submitted on June 5, 2019 constitutes such an administrative appeal.

WHEREFORE, Plaintiff prays that this Court:

(1) Order the defendant federal agency to process and release to Plaintiff all non-exempt copies of responsive records and copies of all reasonable-segregable non-

exempt portions of responsive records that contain properly exempt information;

 (2)  Order the defendant federal agency to waive all fees;

 (3)  Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d);

 (4)  Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

 (5)  Grant such other relief as the Court may deem just and proper.

Date:  July 5, 2019

              Respectfully submitted,

               /s/ Robert J. Eatinger, Jr.
              _____
              Robert J. Eatinger, Jr., Esq.
              D.C. Bar #1035401
              Dunlap Bennett & Ludwig, PLLC
              8300 Boone Blvd
              Suite 550
              Vienna, VA 22182
              (703) 291-8961
              (703) 777-3656 fax
              reatinger@dbllawyers.com

              Attorney for Plaintiff